UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

T.P., *individually and on behalf of L.N., a child with a disability*,

Plaintiff,

-v-

NEW YORK CITY DEPARTMENT OF EDUCATION,

Defendant.

22 Civ. 9413 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves plaintiff T.P.'s motion for attorneys' fees and costs incurred in connection with an action brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*[1]  T.P. requests attorneys' fees and costs, totaling $46,252.45, plus interest, from defendant New York City Department of Education (the "DOE"), covering both the underlying administrative proceedings and this action.  For the reasons below, the Court grants the motion for fees and costs, but in sums below those sought.

## I.     Background[2]

### A.     Facts

#### 1.     The Underlying Administrative Action

On March 26, 2021, T.P., on behalf of her minor son, L.N., by and through counsel at the Cuddy Law Firm, filed a due process complaint ("DPC") against the DOE.  Cuddy Decl., Ex. 21

---

[1] The Individuals with Disabilities Education Improvement Act, Pub. L. No. 108–46, 118 Stat. 2647 (2004), reauthorized (and amended) the IDEA.  This opinion refers to the updated version of the statute as the IDEA.

[2] The facts which form the basis of this decision are taken from the parties' pleadings and their submissions in support of and in opposition to the instant motion—specifically, the declarations

("DPC") at 1.  L.N. has autism, a neurodevelopmental disorder marked by impaired social and communicative skills, "engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences."  34 C.F.R. § 300.8(c)(1)(i).  T.P. and L.N. reside in the Bronx, New York.  Compl. ¶ 2.

In her DPC, T.P. alleged that the DOE had failed to provide L.N. with a free appropriate public education ("FAPE") for the 2019–2020 and 2020–2021 school years.  DPC at 1.  T.P. argued that DOE had failed, *inter alia*, "to assess [L.N.'s] cognitive functioning since March 2017," "to evaluate [L.N.] for physical therapy" despite concerns about his "gross motor development," "to develop appropriate goals" as to L.N.'s "behavioral difficulties" and "sensory dysregulation," and to "provide related services" as mandated by his individualized educational program ("IEP").  DPC at 1–2.  As relief, T.P. sought (1) a finding that the DOE had denied L.N. a FAPE for the two school years, (2) an order requiring the DOE to fund various evaluations of L.N. for use in revising T.P.'s IEP, and (3) compensatory education services to remedy DOE's failure to provide T.P. with a FAPE.  DPC at 6–8.

Three months later, on July 6, 2021, T.P. filed an additional complaint with the DOE, regarding its failure to appoint an Impartial Hearing Officer ("IHO") to adjudicate T.P.'s complaint.  Cuddy Decl. ¶ 36.  In response, on August 5, 2021, the DOE appointed an IHO, Brad

in support of the motion, plus attached exhibits, of Barbara J. Ebenstein, Dkt. 21 ("Ebenstein Decl."), Matthew J. Delforte, Dkt. 22 ("Delforte Decl."), Benjamin M. Kopp, Dkt. 23 ("Kopp Decl."), Kevin M. Mendillo, Dkt. 24 ("Mendillo Decl."), and Andrew K. Cuddy, Dkt. 25 ("Cuddy Decl."); and the declarations in opposition to the motion, plus attached exhibits, of Armelle Hillman, Dkt. 29 ("Hillman Decl."), Emily R. Goldman, Dkt. 30 ("Goldman Decl."), Martha Nimmer, Dkt. 31 ("Nimmer Decl."), Lauren Howland, Dkt. 32 ("Howland Decl."), and Thomas Lindeman, Dkt. 33 ("Lindeman Decl.").  The Court also refers to T.P.'s Complaint. Dkt. 1 ("Compl.").  For exhibits with both internal and Bates-stamped numbering, the Court cites the Bates-stamped page numbers.

H. Rosken, to adjudicate T.P.'s DPC. *Id.* ¶ 37. DOE had indicated that it intended to defend the case, *id.* ¶ 39, prompting Cuddy Law Firm attorneys to begin preparing exhibits and testimony, *see id.* ¶¶ 39–41.

On October 27, 2021, IHO Rosken presided over T.P.'s due process hearing. *Id.* ¶ 42. Only at the hearing did DOE's counsel inform T.P. or her attorneys "that the Department would not be presenting any witnesses" or otherwise contest T.P.'s complaint. *Id.* ¶ 43. T.P.'s lead counsel, Justin Coretti, delivered an opening statement, entered documentary evidence, and presented direct testimony from three witnesses. *Id.* ¶ 44. IHO Rosken concluded that the DOE had "basically concede[d]" that it "failed to provide a FAPE for the school years at issue[,] as it voluntarily declined to present any evidence whatsoever . . . and declined to give either an opening or closing statement." Cuddy Decl., Ex. 23 ("IHO Op.") at 2.

On November 5, 2021, IHO Rosken issued his findings of fact and decision. *See id.* at 8. He found that L.N. did not receive a FAPE for the 2019–2020 and 2020–2021 school years. *Id.* at 4. Consistent with testimony offered by T.P., *see id.* at 5, IHO Rosken held that L.N. was entitled to 3,680 hours of compensatory education services, provided at state expense, *id.* at 7. Neither party appealed IHO Rosken's order.

### 2. T.P.'s Demand for Attorneys' Fees

On May 17, 2022, T.P. submitted to the DOE a demand for attorneys' fees and costs in the amount of $35,260.20. Cuddy Decl. ¶ 50; Hillman Decl. ¶ 10. For six months, T.P. did not receive a response, leading her to file this action for attorneys' fees and costs on November 3, 2022, demanding $36,060.20. Cuddy Decl. ¶¶ 52–53. On December 13, 2022, the DOE made a written offer of settlement in the amount of $23,000. Howland Decl. ¶ 18; *see id.*, Ex. 1 at 1. The offer expired on December 23, 2022, without a response from T.P. Howland Decl. ¶ 18.

Due to what Cuddy Law Firm's managing attorney, Andrew Cuddy, terms "an internal miscommunication," T.P. and the firm did not consider the offer "until several months after [it] had been made." Cuddy Decl. ¶ 57.[3]  At some point in 2023, T.P. contacted the DOE to "advise that [she] would be willing to accept" DOE's now-expired December 2022 offer.  *Id.*  The DOE "responded by reducing the written offer of settlement by a total of $3,000," which T.P. rejected. *Id.*

### B.    Procedural History

On November 3, 2022, T.P. filed the Complaint.  Dkt. 1.  On September 8, 2023, T.P. filed a motion for attorneys' fees and costs, Dkt. 20, and a supporting memorandum of law, Dkt. 26 ("Pl. Br.").  On October 17, 2023, the DOE filed its opposition.  Dkt. 34 ("Def. Br.").  On November 7, 2023, T.P. filed a reply.  Dkt. 35 ("Pl. Reply Br.").

## II.    Applicable Legal Standards

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'"  *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)).  States that receive certain federal funds must "offer parents of a disabled student an array of procedural safeguards designed to help ensure the education of their child."  *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir. 2002).  Parents are

---

[3] Andre Cuddy's explanation appears at odds with Cuddy Law Firm's billing records.  On December 13, 2022, Kevin Mendillo, T.P.'s lead counsel for the fees action, billed 0.30 hours for "[r]eview[ing] [the] ten-day offer received from DOE," and, on December 16, 2022, billed an additional 0.20 hours for "[a]ssess[ing] settlement status and DOL [sic] settlement offer" and "discuss[ing] with AC"—presumably Andrew Cuddy.  Cuddy Decl., Ex. 20 at 4.  And, on December 16, 2022, Cuddy himself billed 0.1 hours for "confer[ring] with BK re: offer of DOL [sic] to settle case."  *Id.*  In light of the documentative record, Cuddy's claim that his firm did not consider the offer until several months later is perplexing.

entitled to bring complaints regarding the "provision of a free appropriate public education" to their child, 20 U.S.C. § 1415(b)(6), and to have those complaints heard by an IHO, *see id.* § 1415(f)(1); N.Y. Educ. L. § 4404(1); *see also A.R.*, 407 F.3d at 72.

"In the United States, parties are ordinarily required to bear their own attorneys' fees—the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001) (citation omitted). However, under the IDEA, if a parent of the child with a disability is the "prevailing party" in the litigation, the district court has discretion to award the parent "reasonable attorneys' fees" and costs incurred.  20 U.S.C. § 1415(i)(3)(B)(i); *see also J.C. v. Reg'l Sch. Dist. 10*, 278 F.3d 119, 121 (2d Cir. 2002).  The award may cover work performed before the IHO or in federal court. *See A.R.*, 407 F.3d at 84 (affirming award of fees incurred during IHO proceedings and before district court).  Prevailing parties are also entitled to reimbursement for the reasonable costs incurred in litigating an IDEA case.  *See G.B. ex rel. N.B. v. Tuxedo Union Free Sch. Dist.*, 894 F. Supp. 2d 415, 443 (S.D.N.Y. 2012).

To determine the award and the amount of fees, the Court must engage in a two-step inquiry.  First, the Court must determine whether the party seeking to enforce the fee-shifting provision is the "prevailing party."  *Mr. L. v. Sloan*, 449 F.3d 405, 405–07 (2d Cir. 2006).  If so, in calculating fees, the Court examines whether the fees are reasonable in light of the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court has the discretion to reduce the award if the fees or hours reported are excessive or misleading.  *Id.* at 437.

### A.    Prevailing Party

To be a prevailing party under the IDEA, a plaintiff must achieve (1) "some material alteration of the legal relationship of the parties" that is (2) "judicially sanctioned."  *A.R.*, 407

F.3d at 67 (cleaned up).  A party who receives agency-ordered relief on the merits of their claim

is a "prevailing party" for the purposes of IDEA.  *Id.* at 75.  A party need not recover on all of its

claims in order to be considered the "prevailing party."  *K.L. v. Warwick Valley Cent. Sch. Dist.*,

No. 12 Civ. 6313 (DLC), 2013 WL 4766339, at *5 (S.D.N.Y. Sept. 5, 2013), *aff'd*, 584 Fed.

App'x 17 (2d Cir. 2014).  However, "it must succeed on a significant issue in litigation which

achieves some of the benefit the parties sought in bringing the suit."  *Id.*

### B.    Calculation of Fees

The starting point for determining the presumptively reasonable fee award is the

"lodestar" amount, which is "the product of a reasonable hourly rate and the reasonable number

of hours required by the case."  *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The lodestar is not "conclusive in all circumstances," and may be adjusted when it fails to

"adequately take into account a factor that may properly be considered in determining a

reasonable fee."  *Id.* at 167.

### 1.    Reasonable Hourly Rates

Under the IDEA's fee-shifting provision, the court determines a reasonable hourly rate

"based on rates prevailing in the community in which the action or proceeding arose for the kind

and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  A reasonable rate is one

reasonable, paying-per-hour client would pay for the same services rendered.  *K.F. v. N.Y.C.*

*Dep't of Educ.,* 10 Civ. 5465 (PKC), 2011 WL 3586142, at *3 (S.D.N.Y. Aug. 10, 2011) (citing

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 522 F.3d 182, 190 (2d Cir.

2008)).  The community used for purposes of IDEA fee-shifting litigation is the district in which

the issue arose—specifically, where the student was denied a FAPE.  *Id.* at *2.  However, in

determining reasonable hourly rates, it is also important to look to the area of legal practice at

issue. That is because legal markets are today so interconnected that it is no longer meaningful, in assessing a reasonable rate, to look at geographic location alone. *See Arbor Hill*, 522 F.3d at 192.

In determining a reasonable rate, district courts are also to consider case-specific variables known as the "*Johnson* factors." These include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 186–87. "A district court need not recite and make separate findings as to all twelve *Johnson* factors, provided that it takes each into account in setting the attorneys' fee award." *E.F. v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014) (citation omitted).

### 2.   **Reasonable Hours**

Once a reasonable rate of pay has been calculated, it is multiplied by a reasonable number of hours expended to determine the award amount. The Court has the discretion to disregard hours viewed as "excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). Furthermore, under the IDEA, courts may "cap" an award of fees to only those incurred before a rejected settlement offer that

would have been more favorable than the relief finally obtained.  *See* 20 U.S.C. § 1415(i)(3)(D)(i).

###    C.    Costs

A district court may also award reasonable costs to the prevailing party.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  The term "costs" includes costs incurred in connection with work yielding fees covered by a fee award, as well as the specific types of costs set out in 28 U.S.C. § 1920, the general provision governing the taxation of costs in federal court.  *See, e.g.*, *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006); *G.B.*, 894 F. Supp. 2d at 443.  Commonly compensable costs include reasonable filing and process server costs.  *See* 28 U.S.C. § 1920; *G.B.*, 894 F. Supp. 2d at 443.

## III.    Discussion

It is undisputed that T.P. prevailed in the underlying administrative proceeding.  The sole issue here is whether the fees and costs T.P. has requested are reasonable.

The Court begins by summarizing T.P.'s fee requests.  The Court then determines the reasonable hourly rates for the relevant timekeepers, a point on which the parties' views are far apart.  The Court finally addresses DOE's request for an across-the-board reduction in fees.

###    A.    Overview of T.P.'s Fee and Cost Requests

As to both fees and costs, T.P. seeks compensation for work performed before the IHO, and for work in this follow-on fees litigation.

As to the underlying administrative proceeding, T.P. seeks fees to reflect hours worked by four attorneys (Andrew Cuddy, Kevin Mendillo, Justin Coretti, and Erin Murray) and six paralegals (Emma Bianco, Shobna Cuddy, Allyson Greene, Cailin O'Donnell, Amanda Pinchak,

and ChinaAnn Reeve).  Before the IHO, Justin Coretti served as lead counsel.  Cuddy Decl. ¶ 44.

The fees T.P. seeks for the administrative proceeding are summarized below:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $550.00 | 3.50 | $1,925.00 |
| Kevin Mendillo | $450.00 | 0.30 | $135.00 |
| Justin Coretti | $425.00 | 56.00 | $23,800.00 |
| Erin Murray | $375.00 | 16.20 | $6,075.00 |
| *Total attorney fees* | | *76.00* | *$31,935.00* |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Emma Bianco | $225.00 | 0.50 | $112.50 |
| Shobna Cuddy | $225.00 | 2.80 | $630.00 |
| Allyson Greene | $225.00 | 5.70 | $1,282.50 |
| Cailin O'Donnell | $225.00 | 3.00 | $675.00 |
| Amanda Pinchak | $225.00 | 2.10 | $472.50 |
| ChinaAnn Reeve | $225.00 | 4.10 | $922.50 |
| *Total paralegal fees* | | *18.20* | *$4,095.00* |

The above figures are drawn from Cuddy Decl. ¶ 63.  T.P. also seeks $30.20 in administrative

costs for faxes, postage, and printing.  *Id.*, Ex. 19 at 1.  In total, T.P. seeks $36,060.20 in fees and

costs for the underlying administrative proceeding.

As to the fee award arising from litigation before this Court, T.P. seeks fees to reflect

hours worked by three attorneys (Andrew Cuddy, Kevin Mendillo, and Erin Murray) and four

paralegals (David Coyle, Shobna Cuddy, Cailin O'Donnell, and ChinaAnn Reeve).  Kevin

Mendillo served as lead attorney.  The fees T.P. seeks for the instant action are summarized

below:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy (pre-2023 rate) | $550.00 | 0.30 | $165.00 |
| Andrew Cuddy (2023 rate) | $600.00 | 1.20 | $720.00 |
| Benjamin Kopp | $425.00 | 0.33 | $140.25 |
| Kevin Mendillo (pre-2023 rate) | $450.00 | 2.80 | $1,260.00 |
| Kevin Mendillo (2023 rate) | $500.00 | 13.50 | $6,750.00 |

| Erin Murray | $400.00 | 0.20 | $80.00 |
|---|---|---|---|
| *Total attorney fees* | | *18.00* | *$9,115.25* |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| David Coyle | $225.00 | 0.40 | $90.00 |
| Shobna Cuddy | $225.00 | 1.80 | $405.00 |
| Kevin Mendillo[4] | $225.00 | 0.30 | $67.50 |
| Cailin O'Donnell | $225.00 | 0.30 | $67.50 |
| ChinaAnn Reeve | $225.00 | 0.20 | $45.00 |
| *Total paralegal fees* | | *3.00* | *$675.00* |

The above figures are drawn from Cuddy Decl., Exs. 19–20.  T.P. also seeks reimbursement for the federal filing fee of $402.  *Id.*  T.P. thus seeks $10,192.25 in fees and costs for litigating this case.

In sum, including the administrative proceedings and this action, T.P. seeks a total of $46,252.45.

**B.      Reasonable Rates**

The Court has considered all *Johnson* factors in its analysis for each timekeeper.  Its discussion here centers on the facts it has found determinative.

**1.      Analysis Applicable to All Timekeepers**

IDEA litigation is undoubtedly a specialized field in which attorneys seek to vindicate vitally important interests of children in need of special education.  T.P., however, has not produced any evidence that, relative to a typical single-plaintiff IDEA case, this case presented novel or complex legal or factual issues.

During the administrative proceeding, the IHO held only one hearing: the substantive due process hearing.  Hillman Decl. ¶¶ 6–7.  During that one-hour 40-minute session, the DOE did not contest the relief sought, present any witnesses, enter any exhibits, or give an opening or

---

[4] Mendillo is a licensed attorney but billed certain administrative tasks under a paralegal rate.

closing statement. *Id.* ¶ 7; *see also* IHO Op. at 2. The DOE's sole contribution to the hearing was its counsel's brief cross-examination of two of T.P.'s witnesses. Hillman Decl. ¶ 2. As IHO Rosken noted in his decision, "the district basically conceded that it denied this student a FAPE for the school years at issue." IHO Op. at 4. The core relief sought—an award of compensatory education—is commonplace in IDEA proceedings. *See, e.g.*, *S.F. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11147 (PAE), 2023 WL 4531187, at *5 (S.D.N.Y. July 13, 2023). This case, the Court finds, thus did not present complex legal or factual issues. *See J.R. v. N.Y.C. Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370, at *4 (S.D.N.Y. Aug. 4, 2021), *aff'd sub nom. H.C. v. N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023) ("[T]his appears to have been a fairly standard action for special education and related services[,] . . . [as] [d]efendant did not put on any witnesses nor present any evidence and agreed to most of [p]laintiff's requests before the [decision] was issued" and "the administrative proceedings in this case took less than two hours"). Nor is there any indication that, in taking on or pursuing this case, the Cuddy Law Firm was inhibited from taking on other work. These facts bear on the hourly rates reasonable here and the hours for which a fee award is warranted. *See H.A. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *5 (S.D.N.Y. Feb. 25, 2022).

For the purpose of assessing reasonable rates, the relevant community is the Southern District of New York, where both this litigation and the underlying administrative proceedings are centered.[5] The relevant practice area is special education law, including IDEA litigation. "In

---

[5] The DOE's brief suggestion to the contrary lacks merit. *Contra* Def. Br. at 6 n.6. Under the IDEA, fees are to be awarded "based on rates prevailing in the community *in which the action or proceeding arose*." 20 U.S.C. §1415(i)(3)(c) (emphasis added). T.P. and L.N. live in the Bronx, where L.N. also attends school. DPC at 1. The Bronx is within the Southern District of New York. As such, the Cuddy Law Firm—despite being based in the Northern District of New York—is "entitled to receive" rates commensurate with the fees "in this district," rather than "the community in which [its attorneys] usually practice[]." *K.F.*, 2011 WL 3586142, at *2.

recent years, the prevailing market rate for experienced, special-education attorneys in the New York area has been between $350 and $475 per hour." *S.F.*, 2023 WL 4531187, at *6 (cleaned up) (quoting *J.R.*, 2021 WL 3406370, at *3); *see also M.D. v. N.Y.C. Dep't of Educ.*, No. 17 Civ. 417 (JMF), 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018) (collecting cases). At the same time, however, "judges in this District have . . . recognized that the passage of time may justify somewhat higher rates for the same type of work performed by the same senior attorneys." *R.S. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2257 (JPO), 2023 WL 6389118, at *2 (S.D.N.Y. Sept. 29, 2023). "Paralegals, depending on skills and experience, have generally garnered between $100 and $125 per hour in IDEA cases in this District." *J.R.*, 2021 WL 3406370, at *3 (citation omitted); *see also R.G. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *3 (S.D.N.Y. Sept. 26, 2019) (collecting cases).[6]

### 2. Andrew Cuddy

T.P. seeks an hourly rate of $550 for attorney Andrew Cuddy, with a $50 rate increase for work billed in 2023. The DOE argues that Cuddy's hourly rate should be $375. Def. Br. at 6.

Cuddy is a 1996 law school graduate who has been litigating special education matters since 2001. Cuddy Decl. ¶ 16. He has litigated "hundreds" of such cases in New York and elsewhere. *Id.* He is the president and managing attorney of the Cuddy Law Firm, which he founded upon his graduation in 1996, and has now become "one of the largest private special education law firms in the country," with six offices nationwide. *Id.* ¶¶ 14–15.

---

[6] For the reasons explained in this Court's recent opinion in *J.G. v. N.Y.C. Dep't of Educ.*, No. 23 Civ. 959 (PAE), 2024 WL 728626 (S.D.N.Y. Feb. 22, 2024), the Court finds unpersuasive T.P.'s reliance, in defense of its claimed billing rates, on (1) the Real Rate Report conducted by Wolters Kluwer; (2) the 2022 Litigation Hourly Rate Survey and Report conducted by the National Association of Legal Fee Analysis; (3) the 50th Annual Survey of Law Firm Economics; (4) the *Laffey* Matrix; and (5) rates and fees suggested by ChatGPT-4. *See id.* at *6–7.

Courts in this District have recently issued awards assigning Cuddy an hourly rate between $375 and $425 per hour, well below T.P.'s requested rate. *See, e.g.*, *N.G. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 8488 (PGG) (JLC), 2024 WL 133615, at *4 (S.D.N.Y. Jan. 12, 2024) (awarding rate of $425); *V.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 6495 (PGG) (KHP), 2023 WL 2609358, at *12 (S.D.N.Y. Mar. 23, 2023) (same); *L.J. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 10672 (KPF), 2023 WL 5747465, at *9 (S.D.N.Y. Sept. 6, 2023) (awarding rate of $400); *E.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11208 (VEC) (GWG), 2023 WL 3138022, at *5 (S.D.N.Y. Apr. 28, 2023), *report and recommendation adopted as modified*, No. 21 Civ. 11208 (VEC) (GWG), 2023 WL 4883324 (S.D.N.Y. July 31, 2023) (awarding rate of $375).

Rates on the lower end of this range are often awarded in IDEA cases where liability is essentially uncontested, as here. *See, e.g.*, *E.W.*, 2023 WL 3138022, at *5 (rate of $375 appropriate where the DOE failed to present evidence or call witnesses); *T.A. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 7104 (GHW), 2022 WL 3577885, at *5 (S.D.N.Y. Aug. 19, 2022) (same); *F.N. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 3379 (JPO), 2022 WL 3544128, at *4 (S.D.N.Y. Aug. 18, 2022) (same). In light of some minimal inflation since these cases, the Court concludes that $400 is an appropriate hourly rate for Cuddy.

### 3.    Kevin Mendillo

T.P. seeks an hourly rate of $450 for senior associate Kevin Mendillo, with a $50 rate increase for work billed in 2023. The DOE argues that the hourly rate for Mendillo should be $300. Def. Br. at 6.

Mendillo was admitted to practice law in New York in 2011 and has been litigating special education matters since 2014. Cuddy Decl. ¶ 18. Since then, he has represented parents

in more than 100 due process hearings.  *Id.*  He serves as a supervisory attorney in the firm's

Auburn, New York office, and managing attorney in its Ohio office.  *Id.*

As with Cuddy, recent awards by courts in this District have assigned Mendillo a far

lower rate than he seeks here.  These past cases have awarded Mendillo an hourly rate between

$300 and $325 per hour, as DOE notes.  *See, e.g.*, *N.G.*, 2024 WL 133615, at *4 (awarding rate

of $300); *L.J.*, 2023 WL 5747465 at *9 (same); *H.W. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 8604

(JLR), 2023 WL 5529932, at *9 (S.D.N.Y. Aug. 28, 2023); *M.D. v. N.Y.C. Dep't of Educ.*, No.

21 Civ. 9180 (LGS), 2023 WL 2557408, at *3 (S.D.N.Y. Mar. 17, 2023) (awarding hourly rate

of $325).  Mendillo performed virtually no work on the underlying administrative action in this

case, billing only 0.3 hours; he served as lead counsel in the fees litigation before this Court,

albeit with limited success (as discussed below).  Given his comparatively lower experience than

Cuddy, and his highly circumscribed role in the underlying IDEA action, the Court finds an

hourly rate of $310 for Mendillo reasonable.

### 4.  Justin Coretti

T.P. seeks an hourly rate of $425 for mid-level associate Justin Coretti.  The DOE argues

that the hourly rate for Coretti should be $275.  Def. Br. at 6.

Coretti is a 2012 law school graduate who has been litigating special education matters

since 2015.  Cuddy Decl. ¶ 20.  Coretti was T.P.'s lead counsel and billed the bulk of the total

attorney hours in the underlying administrative action (56 hours out of 76 total).  *Id.* ¶ 63.

As with Cuddy and Mendillo, T.P.'s proposed hourly rate for Coretti's work far exceeds

the range of rates courts in this District have recently awarded for this work.  These past cases

have awarded Coretti an hourly rate between $300 and $325.  *See, e.g.*, *N.G.*, 2024 WL 133615,

at *4 (awarding rate of $300); *M.Z. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 9451 (AT), 2023 WL

2499964, at *5 (S.D.N.Y. Mar. 14, 2023) (same); *V.W.*, 2023 WL 2609358, at *9 (awarding rate of $325). In light of Coretti's lead role in the administrative action, and the positive results he achieved for T.P., the Court finds an hourly rate of $325 appropriate.[7]

### 5. Erin Murray

T.P. seeks an hourly rate of $375 for junior associate Erin Murray. The DOE argues that the hourly rate for Murray should be $200. Def. Br. at 6.

Murray is a 2019 law school graduate who has been litigating special education matters since 2020. Cuddy Decl. ¶ 17. After Coretti, Murray billed more hours than any other attorney in the underlying administrative action (16.2 out of 76 total). *Id.* ¶ 63.

In other cases, courts have assigned hourly rates to Murray befitting a junior associate of between $200 and $225. *See, e.g.*, *N.G.*, 2024 WL 133615, at *4 (awarding rate of $200); *M.Z.*, 2023 WL 2499964, at *5 (same); *L.M. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 11175 (AT) (BCM), 2023 WL 2872707, at *8 (S.D.N.Y. Feb. 14, 2023), *report and recommendation adopted*, 2023 WL 2495917 (S.D.N.Y. Mar. 14, 2023) (awarding rate of $225); *Y.S. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 2159 (RA), 2022 WL 4096071, at *3 (S.D.N.Y. Sept. 6, 2022) (awarding rate of $200). Given the relative simplicity of the underlying administrative action, and the fact that Murray's role was more limited than Coretti's, the Court finds a rate in the middle of this spectrum appropriate. The Court finds appropriate an $215 hourly rate.[8]

---

[7] In *J.G.*, the Court found a $300 rate reasonable for Coretti, but a slightly higher rate is warranted in this action because Coretti served as lead counsel and achieved excellent results for his client. In *J.G.*, by comparison, he played a more limited role, billing under 10 hours overall and acting only to assist the lead counsel in that case. *See J.G.*, 2024 WL 728626, at *4, *9.

[8] In *J.G.*, the Court found a $250 rate appropriate for Murray. In that case, however, she served as lead counsel, and "[d]espite her short tenure at the law firm, . . . ably handled the case and achieved positive results for J.G." *J.G.*, 2024 WL 728626, at *9. In this case, by comparison, her role was more circumscribed; she did not serve as lead counsel, and her work appears to have

###### 6.      Paralegals

T.P. seeks an hourly rate of $225 for paralegals Emma Bianco, Shobna Cuddy, Allyson Greene, Cailin O'Donnell, Amanda Pinchak, and ChinaAnn Reeve.  The DOE seeks an hourly rate of $100.  Def. Br. at 13.

Shobna Cuddy is the Cuddy Law Firm's senior paralegal and has worked there as a paralegal and office manager since 2007.  Cuddy Decl. ¶ 22.  Greene has an associate's degree and has worked with the firm for an unspecified period.  *Id.* ¶ 25.  O'Donnell has a bachelor's degree and worked as a paralegal with the firm from 2019 to 2022.  *Id.* ¶ 23.  Reeve has an associate's degree and has worked with the firm since 2021.  *Id.* ¶ 24.  T.P. has not supplied further information regarding the paralegals' relevant experience or qualifications.

T.P.'s proposed hourly rate for the paralegals far exceeds the prevailing rate in this District, as reflected in numerous recent decisions.  Decisions involving the Cuddy Law Firm approved fee awards embodying hourly rates of $100 to $125 for paralegal work.  *See, e.g.*, *N.G.*, 2024 WL 133615, at *4 (awarding rates between $100 to $125, depending on each paralegal's experience); *M.Z.*, 2023 WL 2499964, at *5 (awarding rate of $125); *M.D.*, 2023 WL 2557408, at *5 (same).  And this case has not presented the difficulties paralegals might face in complex commercial cases that go to trial, which, in conjunction with paralegals' significant experience, have justified awarding $200 rates for paralegals.  *Cf. Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 56–57 (S.D.N.Y. 2015).  Given the relative experience of Cuddy, O'Donnell, and

---

focused on reviewing records and assisting with relatively rote tasks.  *See* Cuddy Decl., Ex. 19 at 10–11 ("[r]eviewing the records received to date" and "drafting" the "educational history section" and "relief requested" for "the hearing request"), 13 ("telephone call from the client regarding the hearing request"), 14 ("[r]eview[ing]" various evaluations and filing appropriate notes).

Reeve, the Court finds a rate of $125 per hour appropriate for their work. The work of the remaining paralegals (Bianco, Greene, and Pinchak) is assigned a rate of $110 an hour.

### C. Reasonable Hours

The Court turns to the number of "hours reasonably expended." *Hensley*, 461 U.S. at 433. To arrive at that number, a court looks to the "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). The court must then exclude "[h]ours that are excessive, redundant, or otherwise unnecessary," and may reduce the number of compensable hours "for vagueness, inconsistencies, and other deficiencies in the billing records." *Id.* (internal quotation marks omitted); *see also R.P. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 4054 (JMF), 2022 WL 1239860, at *5 (S.D.N.Y. Apr. 27, 2022).

"The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011). In determining "the number of hours reasonably expended" to litigate an IDEA case, a district court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *H.C.*, 71 F.4th at 126.

### 1. Administrative Proceedings

The Court begins with the hours attributable to the administrative proceedings before the IHO. The DOE seeks a 50% global reduction, arguing that Cuddy Law Firm engaged in "vague, excessive or otherwise unreasonable billing." Nimmer Decl. ¶ 6. The Court finds that a significant reduction is warranted, although below the amount proposed by the DOE.

In several respects, Cuddy Law Firm's fee request reflects excessive or unjustified billing.  First, the DPC consisted of seven pages and largely constituted a chronological recitation of T.P.'s educational history.  DPC 1–3.  T.P.'s attorneys billed more than 13.5 hours to drafting the DPC and discussing edits to the same, *see* Cuddy Decl., Ex. 19 at 1–13, a dismayingly outsized amount of time for a relatively rote task.  Considering the number of hours other courts have awarded Cuddy Law Firm for drafting routine DPCs, *see, e.g.*, *L.L. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 2515 (JPO), 2022 WL 392912, at \*4 (S.D.N.Y. Feb. 9, 2022), *aff'd sub nom. H.C.*, 71 F.4th 120 (2d Cir. 2023) (reducing Cuddy Law Firm's time working on a nine-page DPC to nine hours); *R.G.*, 2019 WL 4735050, at \*4 (reducing Cuddy Law Firm's time spent on drafting a three-page DPC to 1.5 hours), a sizable reduction is well warranted here.

Second, Cuddy Law Firm has not justified the 16 hours it billed in preparation for the hearing.  To be sure, the firm reasonably prepared for a contested hearing, learning only late in the day—at the hearing itself—that DOE would acquiesce to T.P.'s request for relief.  *See* Cuddy Decl. ¶ 43.  That the hearing would run only 100 minutes, as opposed to somewhat longer had DOE contested T.P.'s claims, could not have been foreseen.  But Cuddy Law Firm claims (and seeks recompense for) preparation hours than are nearly 10 times the length of the hearing.  Although it is conceivable that such were warranted, the firm's billing records and memorandum in support of its fees do not explain why it was necessary to devote so such time to preparation.  Absent a non-conclusory explanation, a "preparation-to-proceeding" ratio of nearly 10:1 is unreasonably high.  *See L.L.*, 2022 WL 392912, at \*5 (reducing Cuddy Law Firm's time billed for hearing preparation by 50% to "align with the preparation-to-proceeding ratio of between 5:1 and 6:1 in similar cases"); *see also, e.g.*, *F.N.*, 2022 WL 3544128, at \*5 (reducing Cuddy Law Firm's time billed in part due to its failure to justify the number of hours billed given "the

relatively low complexity of the issues at hand, the brevity of [p]laintiff's written submission [to the IHO], and the short length of the uncontested hearing"); *R.P.*, 2022 WL 1239860, at *5 (reducing Cuddy Law Firm's time billed in part due to the "excessive" hours attributed to "preparation of the initial DPC" and "hearing preparation" when the firm could not explain why "the number of hours" were reasonable under the circumstances); *H.C. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *9 (S.D.N.Y. June 17, 2021), *aff'd*, 71 F.4th 120 (2d Cir. 2023) (reducing Cuddy Law Firm's time billed in part due to its failure to explain why "tasks that were administrative and/or secretarial in nature" needed to be completed by attorneys, rather than paralegals).

Third, certain line items in the firm's billing offer cause for concern, in particular the abundance of 0.10-hour time entries—the lowest available—billed on the same day by the same attorney.  Although "billing a tenth of an hour for a discrete task is not inherently problematic, . . . when an attorney on a single day bills multiple 0.10 hour entries for discrete tasks," where the tasks in total likely "occupied less than the sum total of the 0.10 hour increments, such a practice can improperly inflate the number of hours billed beyond what is appropriate."  *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *8 (S.D.N.Y. Aug. 9, 2018).  In the underlying administrative actions, the firm's attorneys often billed 0.10 hours for mundane tasks such as sending or reviewing a single email, Cuddy Decl., Ex. 19, at 6, 13, 16, and instructing a paralegal to contact the client or a witness, *id.* at 7, 9, 17.  Critically, many of these 0.10-hour increments were billed on the same day by the same attorney.  On August 5, 2021, for instance, Coretti billed six 0.10-hour increments, each one for reviewing an email and drafting a reply.  *See id.* at 19.  That is an abusive billing practice.  By their nature, at least some such tasks "could likely have been discharged in seconds," rather than taking six

minutes each, and "a reasonable paying client would expect a timekeeper to consolidate such tasks into a single time entry, rather than paying for a series of 0.10-hour time entries." *H.A.*, 2022 WL 580772, at *9. The firm's failure to do so counsels in favor of a global reduction.

In short, the Court agrees with the DOE that a percentage reduction is appropriate "as a practical means of trimming fat." *McDonald v. Pension Plan of the NYSA–ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006). That said, the Court concludes that a more modest 25% reduction than the 50% sought by DOE is sufficient. In recent cases of comparable complexity brought by Cuddy Law Firm in this District, courts have reduced Cuddy Law Firm's hours spent on administrative proceedings by roughly comparable percentages. *See, e.g., L.L.*, 2022 WL 392912, at *5 (ordering 50% reduction in hours for hearing preparation and approximately 30% reduction for remaining hours); *M.D. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 9180 (LGS) (KHP), 2022 WL 19406557, at *8 (S.D.N.Y. Oct. 21, 2022), *report and recommendation adopted*, 2023 WL 2557408 (S.D.N.Y. Mar. 17, 2023) (ordering approximately 25% reduction in total hours); *J.R.*, 2021 WL 3406370, at *5 (ordering 20% reduction in total hours); *M.D. v. N.Y. Dep't of Educ.*, No. 20 Civ. 6060 (LGS), 2021 WL 3030053, at *5 (S.D.N.Y. July 16, 2021) (same); *H.C.*, 2021 WL 2471195, at *8–10 (same); *A.D. v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 3347 (VEC), 2019 WL 1292432, at *9 (S.D.N.Y. Mar. 21, 2019) (ordering approximately 40% reduction in total hours); *see also Lochren v. County of Suffolk*, 344 F. App'x 706, 709 (2d Cir. 2009) (approving a 25% across-the-board reduction in requested hours in civil-rights action to address overstaffing and duplicative work based on district court's evaluation of the scope and complexity of the matter). "While counsel of course needed to marshal arguments, exhibits and evidence," the Court finds such a reduction appropriate given that "the hours expended by [Cuddy Law Firm] are on the high end for an unchallenged . . . hearing" and given its failure to

justify such hours.  *M.D.*, 2021 WL 3030053, at *5.  The Court thus reduces the firm's hours by 25% for the underlying administrative action.[9]

In sum, given the rates awarded above, the applicable fees are as follows for the administrative proceeding (before the global 25% reduction):

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Andrew Cuddy | $400.00 | 3.50 | $1,400.00 |
| Kevin Mendillo | $310.00 | 0.30 | $93.00 |
| Justin Coretti | $325.00 | 56.00 | $18,200.00 |
| Erin Murray | $215.00 | 16.20 | $3,483.00 |
| *Total attorney fees* | | *76.00* | *$23,176.00* |

| Paralegal | Rate | Hours | Total |
|---|---|---|---|
| Emma Bianco | $110.00 | 0.50 | $50.00 |
| Shobna Cuddy | $125.00 | 2.80 | $350.00 |
| Allyson Greene | $110.00 | 5.70 | $570.00 |
| Cailin O'Donnell | $125.00 | 3.00 | $375.00 |
| Amanda Pinchak | $110.00 | 2.10 | $210.00 |
| ChinaAnn Reeve | $125.00 | 4.10 | $512.50 |
| *Total paralegal fees* | | *18.20* | *$2,150.50* |

These fees add up to $25,326.50.  After a global 25% reduction in each timekeeper's hours, T.P. is entitled to fees totaling $18,994.88 for litigating the underlying administrative action.

---

[9] T.P. argues that any reduction would be inappropriate because the DOE unreasonably protracted the final resolution of the underlying administrative action and intentionally delayed the proceeding by failing promptly to appoint an IHO.  Pl. Br. at 10–11.  That is unpersuasive.  Although the DOE could perhaps have been more responsive, "any protraction on the DOE's part did not rise to the level of being unreasonable."  *H.C.*, 2021 WL 2471195, at *8 (internal quotation marks omitted); *see also S.J. v. N.Y.C. Dep't of Educ.*, No. 20 Civ. 1922 (LGS), 2021 WL 100501, at *4 (S.D.N.Y. Jan. 12, 2021) (rejecting Cuddy Law Firm's argument that DOE unreasonably protracted because the DOE representative was unresponsive, leading to significant delays in the administrative proceedings).  And any such lapse on DOE's part did not occasion the unjustified irregularities afflicting Cuddy Law Firm's claimed hours.  As to DOE's last-minute notice of its decision not to contest the need for relief at the DPC, the Court has recognized that this made it necessary for Cuddy Law Firm to prepare for a contested hearing.  The Court has instead discounted the hours Cuddy Law Firm claims to have spent on hearing preparation for lack of an explanation why such hours were necessary.

T.P. also seeks $30.20 in costs attributable to faxes ($10), postage ($13.70), and printing ($6.50, billed at $0.50 per page). Cuddy Decl., Ex. 19 at 1. The Court finds, in line with other Courts in this District, that no costs should be awarded for faxes, given that the firm has "made no showing why communicating via fax is necessary or appropriate" in this day and age, *R.G.*, 2019 WL 4735050, at *6, and that $0.50 per page for printing is excessive, and the rate should be reduced to $0.10 per page, *R.P.*, 2022 WL 1239860, at *7. As such, T.P. is entitled to $13.70 for postage and $1.30 for printing—that is, $15 in total.

Taking fees and costs together for the underlying administrative action, T.P. is entitled to an award of $19,009.88.

### 2.   This Action

The Court next turns to the hours attributable to this action. T.P. requests compensation for 21 hours of work in connection with this fee application, totaling $10,052. Cuddy Decl. ¶ 63. The DOE seeks an 80% reduction on the ground that Cuddy Law Firm excessively billed for basic tasks and "copy and paste work," and improperly sought compensation for activities after the settlement offer from DOE that the firm ignored. Howland Decl. ¶ 4.

The Court finds a reduction is warranted, but not in the amount suggested by the DOE. To begin, the Court agrees that no fees should be awarded for costs or work performed after November 3, 2022, when the DOE made a written offer of settlement to T.P. in the amount of $23,000. *Id.* ¶ 18; *see id.*, Ex. 1 at 1. Under the IDEA, a court may not award attorneys' fees and related costs "subsequent to the time of a written offer of settlement to a parent if" the court "finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." 20 U.S.C. § 1415(i)(3)(d)(i).

That is the case here, as the total reasonable fees and costs to which T.P. was entitled as of November 3, 2022, were, as discussed below, lower than the DOE's settlement offer. *See R.P.*, 2022 WL 1239860, at *6–7 (declining to award fees or costs incurred after date of DOE's written offer because plaintiffs were entitled to less in fees and costs); *H.C.*, 2021 WL 2471195, at *10 (same); *O.R. v. N.Y.C. Dep't of Educ.*, 340 F. Supp. 3d 357, 371 (S.D.N.Y. 2018) (same).

With respect to the hours that T.P. lists for the period before November 3, 2022—3.70 hours in total—the Court concludes that a modest 10% reduction is warranted. As the DOE notes, Cuddy Law Firm billed 1.1 hours of attorney time to draft a four-page Complaint, *see* Lindeman Decl. ¶ 5, but the Complaint overwhelmingly consists of boilerplate language identical to complaints submitted by the firm in other cases in recent years, *see, e.g.*, *J.R.*, 2021 WL 3406370, ECF No. 1; *V.W.*, 2022 WL 37052, ECF No. 1, and which a paralegal could have copied and pasted in lesser time. Recent cases in this District have reduced the hours that Cuddy Law Firm spent litigating attorneys' fees between 25 to 50 percent. *See, e.g.*, *R.G.*, 2019 WL 4735050, at *5 (reducing Cuddy Law Firm's hours spent litigating attorneys' fees by approximately 26% because the brief "discusse[d] no novel questions and contain[ed] approximately five pages [out of 30] of boilerplate language"); *J.R.*, 2021 WL 3406370, at *6 (reducing Cuddy Law Firm's claimed hours by 25% for its straightforward motion to award attorneys' fees); *M.D.*, 2021 WL 3030053, at *6 (reducing Cuddy Law Firm's 76.2 hours spent on federal court litigation by 50% due to "low degree of complexity"); *L.L.*, 2022 WL 392912, at *5 (reducing Cuddy Law Firm's hours spent on a similar summary judgment motion by roughly half). The Court will impose a substantially smaller haircut here, given that the aggregate hours spent on the federal action—only 3.7 hours in total—were smaller than in other cases. *See, e.g.*, *R.P.*, 2022 WL 1239860, at *7 (30% reduction when Cuddy Law Firm billed more than 5 hours

on drafting the complaint and preparing for the fees action); *R.G.*, 2019 WL 4735050, at *5 (26% reduction when Cuddy Law Firm billed 11.6 hours on drafting the complaint and preparing for the fees action).  "[T]he aggregate hours spent at this stage were not facially outlandish [and] fall short of the hours claimed by the firm in cases where courts have imposed greater percentage reductions."  *J.P. v. N.Y.C. Dep't of Educ.*, No. 21 Civ. 10961 (PAE), 2023 WL 2447264, at *11 (S.D.N.Y. Mar. 10, 2023) (collecting cases).  The Court thus finds a 10% reduction appropriate.

As of December 13, 2022, the firm's billing for the fee action was as follows (before the 10% global reduction):

| Attorney | Rate | Hours | Total |
| --- | --- | --- | --- |
| Andrew Cuddy | $400.00 | 0.20 | $80.00 |
| Kevin Mendillo | $310.00 | 2.60 | $806.00 |
| *Total attorney fees* | | *2.80* | *$886.00* |

| Paralegal | Rate | Hours | Total |
| --- | --- | --- | --- |
| Shobna Cuddy | $125.00 | 0.60 | $75.00 |
| Cailin O'Donnell | $125.00 | 0.30 | $37.50 |
| *Total paralegal fees* | | *0.90* | *$112.50* |

These figures are taken from Cuddy Decl., Ex. 20, with each attorney and paralegal's rate calculated pursuant to the Court's discussion above.  These fees add up to $998.50.  After taking the 10% reduction, T.P. is entitled to fees totaling $898.65 for the firm's work before its receipt of the DOE's settlement offer.  As to costs, T.P. is also entitled to the federal filing fee of $402, which was incurred prior to December 13, 2022.  The fees and costs thus total $1,300.65.

Before the settlement offer, then, T.P. was entitled to an aggregate $20,310.53 in fees and costs across the two actions—a figure considerably lower than the $23,000 offered by the DOE.  As such, T.P. is not entitled to fees and costs "subsequent to the time of [the] written offer of settlement" given that "the relief finally obtained" was "not more favorable . . . than the offer of settlement."  20 U.S.C. § 1415(i)(3)(d)(i); *see also, e.g.*, *R.P.*, 2022 WL 1239860, at *6–7 (in

case litigated by Cuddy Law Firm, declining to award any fees or costs incurred after the date of DOE's written offer because the plaintiffs were entitled to less in fees and costs); *H.C.*, 2021 WL 2471195, at *10 (same); *O.R.*, 340 F. Supp. 3d at 371 (same).  T.P. is thus entitled to an award of $20,310.53.

**D.    Post-Judgment Interest**

"Pursuant to 28 U.S.C. § 1961, the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered."  *True-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (internal quotation marks omitted). Accordingly, T.P.'s request for post-judgment interest is granted.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part T.P.'s motion for attorneys' fees.  T.P. is awarded $20,310.53 in fees and costs, plus post-judgment interest at the applicable statutory rate.  The Clerk of Court is respectfully directed to enter judgment, to terminate all pending motions, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: March 7, 2024
       New York, New York